ADES, Individually and as Executor *v.*
NORINS et al.

[No. 106, October Term, 1953.]

268

*Decided March 25, 1954.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*R. Duncan Clark,* with whom were *Wallace Luchs, Jr.,* and *King & Norlinger* on the brief, for the appellant.

*Thomas C. Kelley,* with whom were *Bernard M. Goldstein, Arthur J. Hilland* and *Kelley & Smith* on the brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

The Orphans' Court of Montgomery County framed and sent to the Circuit Court issues directed to the validity of both an earlier and a later will of a testator. The appellant, in an effort to confine the inquiry to the validity of the later will, seeks in this appeal to reverse the action of the Orphans' Court.

Harry Ades, of Montgomery County, died in 1952. He had executed four paper writings of a testamentary nature—a will dated April 14, 1942, a will dated October 2, 1944, a codicil to the 1944 will dated September 16, 1948, and a second codicil to that will, dated December 14, 1950. The appellant, a son of the testator who was named as executor in both of the wills, filed all four papers with the Register of Wills for Montgomery County and petitioned the Orphans' Court for probate of the 1944 will and its codicils. On February 19, 1952, the court admitted the 1944 will and codicils to probate and the appellant qualified as executor. The following July, the appellees, sisters of the appellant, filed a petition and caveat, which alleged that each of the testamentary paper writings had been procured by undue influence, had not been executed by the decedent when he was of sound mind, had been procured by fraud, and were not the decedent's last will and testament or codicil.

The appellant's answer to the petition and caveat admitted the existence of the other paper writing of April 14, 1942: ". . . purporting to be a previous will of the said Harry Ades, . . ." and that it had been filed with the Register of Wills, but asserted that said paper writing had not been offered for probate because it had been revoked: ". . . by the aforesaid last will and testament dated the 2nd day of October, 1944." The answer denied all the remaining allegations of the petition and caveat, and then set forth: ". . . That the execution of each of the said paper writings purporting to be the last wills and testaments and codicils thereto of the said Harry Ades . . ." had not been procured by undue influence. It was further set forth that each of the paper writings had been executed when the said Harry Ades was of sound and disposing mind, and that none of them had been procured by fraud.

The Orphans' Court heard argument on the petition and answer on October 20, 1953 and entered an order framing four issues as to each of the four documents, namely, whether it was procured by undue influence, whether it was executed by the decedent when he was of sound and disposing mind, whether it was procured by fraud, and whether it was the last will and testament or codicil of decedent. The court directed these issues to be certified to the Circuit Court for Montgomery County for trial by jury. The appellant appealed, challenging the right of the caveators, the appellees here, to have issues 13, 14, 15 and 16, relating to the will of 1942, tried by a jury before the will of 1944 has been set aside.

Both the will of 1942 and that of 1944 leave substantially all of the decedent's estate to the appellant, after the death of the decedent's wife. There are minor differences concerning specific legacies, but essentially, the provisions of each instrument are substantially the same. The 1944 will contains no revocation clause but both wills purport to dispose of decedent's entire estate. The appellees take $1,000.00 each under the 1942 will,

if living at the death of their mother, and one of them takes the same amount under the 1944 will and codicils, while the other takes $2,000.00 and an automobile.

The question of jurisdiction and the proper method of procedure, where a will has been probated or offered for probate, and another will is before the court but not offered for probate, has received varying answers from the relatively few courts which have considered it. Some courts hold that the validity of the later will should be determined before that of an earlier will is taken up, while others say that unless there is a conflict of interest, by reason of different caveators, or for other reasons, it is not only appropriate, but desirable, to try the validity of both wills at the same time. See annotation in 119 A. L. R. 1099; and *Page* on *Wills*, Lifetime Ed., Vol. 2, Sec. 601.

The Maryland authorities which have touched on the aspects of the question indicate that the Orphans' Court did not abuse its discretion in sending for trial issues as to both wills since, as to both, the interests of the parties are identical and the questions to be answered are the same. The law confides in the Orphans' Court power to determine whether or not a will should be admitted to probate. To aid in the execution of that duty, the Legislature has empowered the court to direct any issue of fact to be tried by plenary proceedings and with the help of a jury. Upon the request of either party, the Orphans' Court is required to frame issues and send them to a court of law for trial. An issue is a single, definite, and material question framed from the allegations of a petition and the answers thereto. Before an issue is acted upon, the Orphans' Court must determine: 1, whether it has jurisdiction of the subject; 2, whether the question raised by the issue was properly before the court; and 3, whether the issue is relevant and material to that question. If the court has no jurisdiction, or if the question is not before the court, or if the issue is irrelevant or immaterial to that question, it is the duty of the Orphans' Court to refuse to send

it to a court of law for trial. *Fidelity Trust Co. v. Barrett*, 186 Md. 483, 487. In answering issues the circuit court acts, strictly speaking, not as an appellate court nor in the exercise of its original jurisdiction. It acts rather as: ". . . a tribunal ancillary to the orphans' court, whose aid is invoked for the single purpose of determining issues of fact submitted to it by the orphans' court for its guidance in dealing with some matter before it." *Holland v. Enright*, 167 Md. 604, 607.

In the instant case, the Orphans' Court was confronted by the allegations of the petition and caveat that neither of two wills before it was valid, the defects alleged being the same in each case. The answer of the caveatees is that both wills were valid but that the earlier will had been revoked by the later. There is thus presented a flat conflict as to the validity of both of the wills. Essentially, the basic fact to be determined is whether Harry Ades left the residue of his estate to one son, under either or both of the wills, or whether he died intestate so that all his children share equally in his estate. To help the Orphans' Court answer this question, it sought the aid of a jury to determine the facts as to each of the wills. Certainly no foresight is required to see that if the appellees were required to attack first the 1944 will and were successful, the appellant would offer the 1942 will for probate and the appellees would then attack it on the same grounds as had overcome the 1944 will. In the highly improbable event that appellant refused to offer the 1942 will, the Orphans' Court could order him, as executor, to offer it; *Bridge v. Dillard*, 104 Md. 411, 422; or, indeed, if found reasonably necessary, the court could appoint an administrator *ad litem.* *Friedenwald v. Burke*, 122 Md. 156, 161. A caveat may be filed to a will either before or after it is exhibited to the Register of Wills or the court for probate. Article 93, Section 376, Code of 1951. We think it was within the power of the Orphans' Court, and appropriate, for it to consider the validity of both

wills at the same time and to seek answers to questions of fact from the same jury.

There can be no doubt of the standing of the appellees to challenge both wills. One attacking a will must have an interest in the matter. If his sole interest arises as a taker under an earlier will, the validity of that will must be established before the second will can be attacked, for, otherwise the attack may be by one who would not benefit by its overthrow. *Safe Deposit & Trust Co. v. Devilbiss,* 128 Md. 182.

Where, however, one has an interest under an earlier will and also as a taker in intestacy, he may attack the later will without electing whether he does so as taker under the first will or in intestacy, and so without first establishing the validity of the earlier will. *Hamill v. Hamill,* 162 Md. 159. And, of course, if he knocks down the later will, he may, as heir or next of kin, attack the earlier will. *Loyola College v. Stuart,* 179 Md. 96; *Johnston v. Willis,* 147 Md. 237, 240, 241.

We see no reason why the appellees, having elected to proceed as heirs and next of kin, may not try the validity of both wills at one time.

Even in the cases where the caveator must establish the earlier will to show his interest as a party, it has been held essential that both wills be produced before the jury. *Preston v. Preston,* 149 Md. 498, 518.

Two early cases indicate that the Orphans' Court was right in directing that both wills be inquired into under the simple facts here present.

In *Pegg v. Warford,* 4 Md. 385, the testator executed two wills, one in 1848 and the other in 1845. One set of caveators attacked one will, and another set, the other will. The Court said this: "We, therefore, hold it proper for the orphans court to order a joinder of all the caveators when the issues they desire *are the same in substance;* . . ." It then went on to point out that this was not the situation in that case, saying: ". . . the interests of the different caveators may be, to a certain extent, conflicting, . . . It may be to the interest of some

of them to sustain the will of 1845, whilst they assail that of 1848. . . There ought not to be a joinder of parties whose proposed ends are not the same, but where they are so there is, in our judgment, a power in the court to compel it." In *Worthington v. Ridgely,* 52 Md. 349, a paper purporting to be a last will was attacked by one of the executors on the ground that after its execution, it had been fraudulently altered in part. Later, two heirs filed a caveat, alleging that the entire will was invalid because the testator was not of sound mind and had been subjected to undue influence, misrepresentation, fraud and deceit. Four issues were asked by the first caveator. The two heirs asked for six issues. All were allowed by the Orphans' Court and were grouped together in one case for trial in the circuit court. The first caveator insisted that his case be separated from that of the heirs at law and that two cases, instead of one, be ordered to the circuit court for trial. This Court held it proper to submit all of the issues to one jury.

The appellant argues that the Orphans' Court may not act where a will has not been offered for probate. In *Emmert v. Stouffer,* 64 Md. 543, the decedent left a will naming her sons, the appellees, as executors. They produced this paper in the Orphans' Court of Washington County, and at the same time, filed a petition for letters of administration, alleging that the will of their mother was invalid, because at the time she executed it, she was mentally incapable. The Orphans' Court agreed, and granted letters of administration. This Court held that the grant of letters did not prove the intestacy of the deceased and that the statement of the Orphans' Court that the will of the mother was not valid was of no effect, because: ". . . the Orphans Court has no jurisdiction to determine the question of probate, until the will is exhibited for the purpose of having it proved. Now the petition on which the Orphans Court granted letters of administration distinctly stated that the paper-writing purporting to be a will was not presented for probate;

. . ." The Court said: "Our conclusion is that it had not the jurisdiction to decide the question of probate under these circumstances." In *Bridge v. Dillard, supra,* a sister and niece of the testatrix filed a petition and caveat in the Orphans' Court of Baltimore City to a will which they filed as an exhibit to the petition. How it came into their possession is not shown. It was not deposited with the Register of Wills nor offered for probate by anyone. The executor named in the will filed a petition and asked for its delivery on the ground that the residence of the testatrix was Virginia. The appellants asked for an issue for trial before a jury as to whether the testatrix was a resident of Baltimore at the time of her death. This Court held that the Orphans' Court had no jurisdiction to take any action in regard to the will, or the residence of the testatrix, but should have delivered the will to the executor, and concluded: "We decide that the question of the residence of a testatrix cannot be raised in the Orphans' Court, until the question as to the probate of the will is properly before the Court. The will must either be offered for probate or the question of its probate presented to the Court under proper proceedings for that purpose. . . Had the appellants instead of offering the will for caveat, as was done, deposited it with the Court, or the Register of Wills, and then obtained an order of the Court directing the executor to produce the will for probate, the question of the testatrix's residence would have then been properly before the Court for determination."

These last two cases hold then that the Orphans' Court is without jurisdiction to act in regard to a will if it is not offered for probate or deposited with the court officially, but rather, "offered for caveat". This is not the case before us. Here, the 1942 will had been filed with the court officially and, as we have noted, it is beyond speculation that if the 1944 will were first knocked down, the 1942 will would be offered for probate, either voluntarily by the executor or by action of the court, and would be attacked by the same parties on the same

issues. That is made plain by the allegations of the petition and caveat and the answer of the caveatees. We have in the pleadings an affirmative averment on the one side, as to the invalidity of the 1942 will, and a denial thereof on the other. This presents that "collision of statement", which is the very "substance and essence" of an issue as to a material fact in a matter as to which the court has jurisdiction. *Little Sisters of the Poor v. Cushing*, 62 Md. 416, 420.

Mr. *Page,* in the work on *Wills,* which we have cited above, says that there should be power in the probate court to inquire into both wills, where one has been probated or offered for probate, and the other is before the court. He adds, in Section 601 (page 131) of Vol. 2 of that work: "In many cases a better understanding of the situation can be had and much time can be saved by determining the validity or invalidity of all of the wills at one hearing. Power of this sort has been held to exist; and the probate court has been upheld in compelling the submission for probate of other wills, in the proceeding which was started originally for the probate of one will.

"In many cases of this sort, similar facts must be considered in determining the validity of each will; it takes but little longer to determine the facts for a number of wills than it does for one will; and often the court can get a clearer idea of the entire transaction by hearing, at one time, the evidence of the execution of the different wills."

We think that the author's conclusions are sound, and that the purpose of the Maryland probate law and common sense were gratified, under the facts of this case, by the action of the Orphans' Court in passing the order which is complained of by the appellant.

*Order affirmed, costs to be paid by the estate.*